BONNEY, EPSTEIN & GILBERTI, LLC
321 Broad Street
Red Bank, New Jersey 07701
(732) 747-4700
Attorneys for defendant Lawrence Ray

**CV 04   00013**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Criminal Action No. 00-196(ILG) |
| v. | |
| **LAWRENCE RAY,** | |
| Defendant. | |

GLASSER, J.

CHREIN, J.

**PETITION UNDER 18 U.S.C. § 2255 TO VACATE
CONVICTION AND SENTENCE**

Petitioner Lawrence Ray, by his attorneys, Michael V. Gilberti and Bonney, Epstein &
Gilberti, LLC, petitions this Court under 28 U.S.C. § 2255 for an Order: (1) vacating Mr. Ray's
conviction; (2) vacating the sentence on April 9, 2003; (3) permitting him to litigate his public
authority defense that counsel did not pursue; (4) alternatively, vacating the home confinement
condition of his sentence; and (5) granting such other relief as the Court deems appropriate, all
based upon the following:

**A. The Procedural History of the Case.**

1.  In early 2000, the grand jury returned a twenty-count indictment, charging Mr. Ray and eighteen other people with violations of the RICO Act and other federal statutes under 18 U.S.C. §§ 1962(c), 1962(d), 371, 1951, 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 1956(h), 1963, 2 and 3552 *et seq.*, and 15 U.S.C. §§ 78j(b) and 78ff.   Indictment ¶¶ 124, 127 (pp.62-64). Significantly, the indictment charged Mr. Ray in only two counts, alleging that he participated with others in securities fraud and a conspiracy to commit securities fraud under 18 U.S.C. §§ 371 and 3551 *et seq.*, and 15 U.S.C. §§ 78j(b) and 78ff relating to the U.S. Bridge of New York, Inc. ("USBNY").  Relevant excerpts of the indictment are attached to and made a part of this Petition as Exhibit 1 ("Ex. 1).

2.  These charges were based upon the claim in the indictment that: "In or about and between August 1995 and September 1995, a dispute arose concerning a substantial cash payment in order for USBNY to obtain bonding in connection with future construction projects." [Ex. 1, ¶ 27(c) (p. 14)]  At the hearing on the defendants' pretrial motions, the government described Mr. Ray's role this way:

> The U.S. Bridge of New York is owned by Mr. Polito who the indictment alleges is a Gambino associate and the government would prove that he's closely connected to Mr. Garafola who is a Gambino soldier.  Mr. Polito owns the company, as the indictment alleges; Mr. Lombardo, another defendant in the case who's alleged to be a Bonanno associate, brought Mr. Ray in to the deal, to the conspiracy.  The idea was to facilitate the U.S. Bridge of New York manipulation, to make it a stock that could be sold and could be manipulated, there was the idea that it would be useful to have bonding.  U.S. Bridge of New York was a construction company and the bonding . . . would arguably permit U.S. Bridge of New York to bid on larger contracts.  Mr. Lombardo . . . brought Mr. Ray in to be bribed, basically to get $100,000 to pay a bribe to achieve the bonding.  Mr. Polito pays the bribe, the U.S. Bridge of New York IPO happens . . . but the bonding doesn't occur.

[Transcript (2-2-01) at page 12, lines 8-25.  Relevant excerpts from the hearing transcript are attached to and made a part of this Petition as Exhibit 2 ("Ex. 2").]

2

3. Mr. Ray appeared at the arraignment with counsel Thomas G. Roth ("counsel") and entered a plea of not guilty to all charges.

4. On November 15, 2000, counsel filed pretrial motions on behalf of Mr. Ray for an order:

    (a) severing his case from that of his co-defendant, under Fed. R. Crim P. 14;

    (b) compelling the production of additional discovery, under Fed. R. Crim. P. 16;

    (c) dismissing the indictment against Mr. ray as violating the rule against multiple conspiracies;

    (d) requiring the government to disclose evidence under Fed. R. Evid. 404(b); and

    (e) permitting Mr. Ray to join in motions of other co-defendants, where applicable.

A copy of counsel's notice of motion and Affidavit in support of Mr. Ray's pretrial motions and detailing the pretrial proceedings and his contacts with the prosecutor are attached to and made a part of this Petition as Exhibits 3 and 4 (Ex. 3" and "Ex. 4"), respectively.

5. The government opposed these motions, and on February 2, 2001, the Court held a hearing and denied Mr. Ray's motions. [*See* Ex. 2]

6. On September 4, 2001, counsel advised the Court of his differences with Mr. Ray and requested a conference to permit him to withdraw as Mr. Ray's counsel. A copy of his letter to the Court is attached to and made a part of this Petition as Exhibit 5 ("Ex. 5"). Subsequently, the Court let him withdraw, and Mr. Ray was left to defend himself.

7. Subsequently, in 2002, after all other codefendants pled guilty, Mr. Ray, without the benefit of counsel, entered a guilty plea to count 10 (securities fraud) of the indictment. A copy of the judgment of conviction is attached to and made a part of this Petition as Exhibit 6 ("Ex. 6").

3

8. On April 9, 2003, having managed to retain new counsel, Edward McDonald, Esquire, the Court sentenced Mr. Ray to five years' probation, nine months of home confinement, 300 hours of community service, $5,000 fine and a $100 special assessment. *See* Ex. 6.

### B. The Hearing on Mr. Ray's Pretrial Motions.

9. During the argument on Mr. Ray's pretrial motions, Mr. Roth argued that "my client is uniquely situated here. He not only cooperated with the FBI for a very extensive period of time on all sorts of matters but also cooperated with the FBI in this particular case against at least one defendant who will be sitting in the courtroom with him, Mr. Garafola." [Ex. 2 at 20:5-9] He added that "we've interposed a public authority defense here and I've served a notice on the government." [Ex. 2 at 20:21-22] He added that: "My client had nothing to do with stock manipulation, had had nothing to do with US. Bridge. He was sought out by U.S. Bridge as an intermediary to go to a bonding company to get a bond and the allegation is that . . . my client got money and in turn was supposed to bribe somebody in the bonding company." [Ex. 2 at 21:10-15]

10. Later in the proceeding, Mr. Roth stated: "My client did not start cooperating until 1996. After he did cooperate he was debriefed about everything that happened in 1995 by the FBI on numerous occasions . . . He was told by the FBI that if he continued to cooperate and his cooperation was extensive after 1996 and did include matters within this indictment was told that he would not only not be prosecuted, he wouldn't have to testify. That promise . . . by the FBI is highly relevant on a public authority defense and he cooperated with the express promise by the FBI that if he did so and, in fact, was under the impression that he was risking his life while he was doing it, he wouldn't be prosecuted on this case. The FBI and the United Sates Attorney's Office then reneged on that promise and, therefore, he was indicted . . . ." [Ex. 2 at 25:18-26:8]

4

11. After hearing some additional argument, the Court remarked: "if what you say is correct, is there some basis for a motion by you to dismiss the indictment against Mr. Ray by way of enforcing a promise which you believe you can establish or by way of enforcing a promise that he would not be called as a witness?" [Ex. 2 at 26:24-27:4] Moments later, the Court added: "if everything you say is true and there was some agreement, maybe you have some remedy with respect to that." [Ex. 2 at 27:20-22]

12. After hearing additional argument on Mr. Ray's motion for the release of his informant file, the Court remarked: "I'm still at a loss to really feel comfortable that I can make an informed judgement [sic] on this public authority defense, even the inconsistent defenses . . . ." [Ex. 2 at 31:18-20]

13. Finally, counsel requested "the Court's permission . . . [to] make a pretrial motion on the issue perhaps attempting to enforce the government's promise." [x. 2 at 32:19-22]

14. The motion had the potential of dismissing the indictment against Mr. Ray and avoiding further proceedings in the case. However, counsel never filed the motion. Instead, he withdrew as counsel, leaving Mr. Ray to proceed along.

15. At that time, Mr. Ray did not have sufficient funds to retain new counsel, and ultimately entered a guilty plea without counsel. It was only later that he succeeded in scraping together sufficient funds to hire Mr. McDonald. However, Mr. McDonald never completely understood the theory of Mr. Ray's motion and would not, and did not, file it. As a result, Mr. Ray proceeded to be sentenced.

## C. Mr. Ray's Cooperation.

16. According to the discovery in this case, Mr. Ray started cooperating with the Federal Bureau of Investigation in the spring of 1996. At that time, Mr. Ray had learned from Steven

Blanco that Edward Garafola was putting a "contract" on his life. At that time, Mr. Ray met with Special Agent Gary Uher and two other agents and discussed their activities. During the next several years, Mr. Ray met with federal agents on numerous occasions and provided much information about their activities, including matters relating to this case. Portions of the information related to Italian and Russian "mob" operations and placed the safety of Mr. Ray and his family at risk.

18. During Mr. Ray's cooperation, agents of the FBI promised him that, in exchange for the information he had provided, and would continue to provide, the government would not prosecute him for any of the matters, including the incidents on which this indictment was based.

### D. Mr. Ray's Counsel was Constitutionally Ineffective.

19. By not pursuing this matter, his original counsel was ineffective, and in sustaining this conviction, Mr. Ray has been prejudiced. If counsel had filed the motion and succeeded, the proceeding against Mr. Ray would have been over, and he would not have had to plead guilty. By not picking up on the issue and proceeding on it, his second counsel was also ineffective, and for the same reason, Mr. Ray was prejudiced.

### E. Mr. Ray's Sentence.

20. On April 9, 2003, the Court imposed a sentence on Mr. Ray of five years' probation and nine months' home confinement. After the sentencing, the U.S. Probation Office in New Jersey began supervising Mr. Ray's probation and monitoring his compliance with the home confinement condition. *See* Ex. 6.

21. Since at least as early as 2003, Mr. Ray has been attempting to gain employment as a business consulting. In early 2003 (and dating back several years), Mr. Ray has not been in sound financial condition, due in no small part to having to defend this case.

6

22. Since July 2003, Mr. Ray has succeeded in entering several consulting agreements that would provide adequate remuneration to alleviate many of his financial problems and enable him to support his family.

23. Based upon the nature of his business and the location of clients and potential customers, Mr. Ray has been called on to attend many meetings and pursue potential customers outside New Jersey and at times earlier and later than the hours of his monitoring. For example, he has had to meet with clients in Arizona, Washington, D.C., Ohio and Georgia.

24. Between April 2003 and October 2003, the New Jersey probation office has been cooperative in Mr. Ray's endeavors. It permitted him to attend these meetings and visit his customers and, as a result, Mr. Ray's financial condition has improved markedly during that period.

25. However, since October 2003, the New Jersey probation office has changed its approach and has prevent Mr. Ray from attending important meetings and visiting potential customers. This change in policy has had a severe, negative effect on Mr. Ray's business. If continued, this policy will endanger Mr. Ray's ability to earn a living and subject him to a financial hardship that may result in the loss of his home and the inability to support his family. It will certainly cause him to lose at least one client and substantial consulting fees, and it will prevent him from developing additional business necessary for him to support his family.

WHEREFORE, petitioner Lawrence Ray respectfully requests this Court to vacate his conviction, vacate the sentence imposed on April 9, 2003, permit him to litigate his public

7

authority defense that counsel did not pursue, remove the home confinement condition from his sentence, and grant him such other relief as the Court deems appropriate.

Respectfully submitted,

MICHAEL V. GILBERTI
Bonney, Epstein & Gilberti, LLC
Attorneys for Petitioner Lawrence Ray

Dated: December 19, 2003

8

## VERIFICATION

I hereby declare under penalty of perjury that the facts stated in the foregoing

motion and memorandum of law are true to the best of his knowledge and belief.

Executed on: _Dec 19, 2002_

_LAWRENCE V. RAY_

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Petition and Memorandum of Law appended hereto has been sent this 19th day of December, 2003, by regular U.S. Mail with sufficient postage affixed thereto to insure delivery thereof to Eric O. Corngold, Esquire, Assistant U.S. Attorney, Office of the U.S. Attorney for the Eastern District of New York, One Pierrepont Plaza, 147 Pierrepont Street, Brooklyn, New York 11201.

BONNEY, EPSTEIN & GILBERTI, LLC
321 Broad Street
Red Bank, New Jersey 07701

Michael V. Gilberti
Attorney for the Petitioner Lawrence Ray